UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FREECONFERENCE.COM, INC.<br>1800 Vine Street, Suite 222<br>Los Angeles, CA 90028<br><br>  Plaintiff,<br><br>v.<br><br>ATT, INC.<br>175 E. Houston<br>San Antonio, Texas 78205<br><br>AT&T COMMUNICATIONS<br>SERVICES, INC.,<br>175 E. Houston<br>San Antonio, Texas 78205<br><br>AT&T CORP.<br>1 AT&T Way<br>Bedminister, New Jersey 07921<br><br>and<br><br>AT&T MOBILITY, INC.<br>5565 Glenridge Connector<br>Atlanta, Georgia 30342<br><br>  Defendants. | Civil Action No. |

## **COMPLAINT**

Plaintiff, FREECONFERENCE.COM, INC. ("FreeConference"), by and through its undersigned attorneys, sues defendants, AT&T, INC. and its controlled entities and subsidiaries, AT&T COMMUNICATIONS SERVICES, INC., ("AT&T CS"), AT&T CORP. ("AT&T IXC"), and AT&T MOBILITY, INC. ("Cingular") (collectively, "AT&T"), for damages and to enjoin AT&T from blocking calls placed to FreeConference and withholding interexchange (*i.e.*,

1

long distance) terminating access fees from certain local exchange carriers ("LECs") to which FreeConference is a subscriber. Plaintiff seeks injunctive relief in part because there is no adequate remedy at law to prevent the imminent destruction of FreeConference's business and reputation on account of AT&T's unlawful self-help and unilateral refusal to deal with FreeConference's customers and in part to maintain the competitive status quo until such time as the Federal Communications Commission ("FCC") has modified or refused to modify AT&T's duties and responsibilities as a telecommunications common carrier and alleges as follows:

## JURISDICTION AND VENUE

1. Jurisdiction over this action is based on Section 4 of the Clayton Act, 15 U.S.C. §15, authorizing any person injured in his business or property by reason of anything forbidden in the antitrust laws to sue therefor and by Section 16 of the Clayton Act, 15 U.S.C. §16, authorizing any person to sue for and have injunctive relief against threatened loss or damage by a violation of the antitrust laws, including a violation of Section 2 of the Sherman Act as alleged in Count I herein. Jurisdiction of this action is also based on 28 U.S.C. §1337, authorizing this court to adjudicate any civil action arising under any Act of Congress protecting trade and commerce against restraints and monopolies.

2. Jurisdiction over this action is also based on Section 406 of the Communications Act of 1934, as amended ("Communications Act"), 47 U.S.C. §406, authorizing this court to issue a writ or writs of mandamus against carriers subject to the Communications Act for violating any of the provisions thereof which prevent the person seeking the writ from receiving service in interstate or foreign communication by wire or radio or upon terms or conditions as favorable as those given by said carrier for like communication or transmission under similar conditions to any other person, as alleged in Count II, herein.

3. Jurisdiction over this action is also based on Section 207 of the Communications Act, 47 U.S.C. §207, authorizing any person claiming to be damaged by a common carrier subject to the provisions of the Communications Act to bring suit for the recovery of such damages, as alleged in Count III, herein.

4. Jurisdiction over this action is also based on 28 U.S.C. §1331, authorizing this court to hear civil actions arising under the Constitution, laws, or treaties of the United States, such as are alleged in Counts I, II, and III, herein.

5. Venue is proper under Section 12 of the Clayton Act, 15 U.S.C. §22 and under 28 U.S.C. §1391(c).

## THE PARTIES

6. Plaintiff, FreeConference, is a corporation organized under the laws of the state of Delaware with its principal offices at 1800 Vine Street, Suite 222, Los Angeles, CA 90028. Plaintiff provides teleconferencing services through specialized telecommunications equipment installed at locations in the states of Iowa, Kansas, Nevada, Minnesota, South Dakota, New York and California. Nearly all of plaintiff's customers participate in teleconferences by dialing standard telephone numbers assigned to them on the public switched telephone network to reach one or more of plaintiff's locations, incurring long-distance charges for placing the call. Customers using this service then dial a pre-assigned numerical code assigned to a particular conference or a particular customer. Plaintiff's customers pay no fees to plaintiff for this type of service. Fees are paid to plaintiff by the LECs which receive the long-distance calls and deliver them to plaintiff. The LECs in turn collect terminating local exchange access charges from the interexchange carrier ("IXC") transmitting the call to the LEC for delivery to plaintiff's locations. Plaintiff may also receive a separate commission from the LECs terminating the call.

7.    Defendant, AT&T, INC., upon information and belief, is a corporation organized under the laws of Delaware with its principal offices at San Antonio, Texas. AT&T, INC. is a telecommunications common carrier and a provider of telecommunications services, including toll and toll-free IXC services and conference calling services, and transacts business in the District of Columbia.

8.    Defendant, AT&T C-S, upon information and belief, is a corporation organized under the laws of Delaware with its principal offices at San Antonio, Texas. AT&T C-S is a telecommunications common carrier and provider of telecommunications services, including toll and toll-free IXC services and conference calling services, and transacts business in the District of Columbia.

9.    Defendant, AT&T IXC, upon information and belief, is a corporation organized under the laws of New York with its principal offices at Bedminister, New Jersey. AT&T IXC is a telecommunications common carrier and a provider of telecommunications services, including toll and toll-free IXC services and conference calling services, and transacts business in the District of Columbia.

10.    Defendant, Cingular, upon information and belief, is a corporation organized under the laws of Delaware with its principal offices at Atlanta, Georgia. Cingular is a CMRS carrier and a provider of telecommunications services, including toll and toll-free IXC services and conference calling services, and transacts business in the District of Columbia.

## FACTUAL BACKGROUND

11.    At all times material hereto, upon information and belief, AT&T was a provider of "long distance" IXC services. Interexchange calls are ordinarily placed by customers of an IXC who initiate the call through their LEC. The IXC usually pays a fee ("originating access

fee") to the LEC for transporting and passing the traffic to the IXC. The IXC delivers the call to one or more terminating LECs that provide service to the call recipient, for which the IXC also usually pays a fee to the LEC ("terminating access fee"). Wireless carriers such as Cingular may serve as both originating and terminating LEC and IXC for a particular call (for calls originating and terminating on the same wireless network) or as originating LEC and IXC only (for calls originating but not terminating on the same wireless network) or as terminating and IXC only (for incoming calls not originating on the wireless network).

12.     At all times material hereto, upon information and belief, AT&T was a provider of toll-free long distance services ("toll-free services"). While toll-free calls are also placed through an originating LEC, the party placing the call does not pay an IXC carrier. Fees for toll-free services are paid by the party receiving the call as part of a subscription arrangement between the receiving party and the toll-free service provider.

13.     While most of plaintiff's customers participate in teleconferences by placing a long distance call through an IXC (such as AT&T) to a standard telephone number assigned to plaintiff at one of plaintiff's locations around the nation, plaintiff also offers a small minority of its customers (less than 5%) the option to participate in teleconferences through a toll-free number ("toll-free teleconferencing"). These customers do not incur long distance charges but instead pay a per minute usage charge to the teleconference provider based on the number of lines joining the teleconference. The teleconference provider in turn subscribes to and pays for the toll-free services. The vast majority of plaintiff's competitors (including AT&T) only offer toll-free teleconferencing. Upon information and belief, AT&T provides itself toll-free services for use in its offer of toll-free teleconferencing to the public.

14. On or about March 9, 2007, plaintiff became aware that certain of its customers using Cingular cellular telephone service were unable to reach and join their teleconferences on certain telephone numbers assigned to plaintiff for its own lawful, commercial use, specifically, five (5) to seven (7) numbers assigned to plaintiff that upon information and belief are being blocked by Cingular.

15. On or about December 11, 2006, plaintiff became aware that AT&T had suspended payments of terminating access fees to certain LECs, including at least one (1) LEC that provides local exchange services and assigned telephone numbers to plaintiff. Said fees are tariffed rates on file with the FCC and/or with various state utility regulatory commissions and are subject to modification and amendment through established administrative procedures.

16. AT&T's blocking of specific telephone numbers assigned to and used by one or more specific business subscribers and its suspension of payment of terminating access fees to particular LECs is not authorized by any state or federal statute or court decision or by any state or federal regulatory authority or justified by any applicable law or regulation.

17. Upon information and belief, AT&T has not availed itself of any established state or federal administrative procedure for modifying or reducing the relevant terminating access fee tariffs, but has instead simply chosen to block calls that would generate such fees and refused to pay them in spite of the relevant terminating LECs having provided AT&T with access services to which the unpaid terminating access fees apply pursuant to filed tariffs.

## COUNT I

### (Monopolization and monopoly maintenance in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2)

18. The allegations in paragraphs 1–17, above, are hereby incorporated herein as if fully re-alleged in this count.

19. The antitrust violation alleged in this count involves three product markets: The product market for IXC services (the "IXC market"), the product market for toll-free services (the "toll-free market") and the product market for conference calling services (the "teleconferencing market").

20. The relevant geographic market in each case is the United States.

21. AT&T, including AT&T IXC and Cingular, upon information and belief, by revenue and market share, is the largest provider of services in the IXC market and possesses monopoly and market power in the IXC market.

22. AT&T, upon information and belief, by revenue and market share, is the largest provider of services in the toll-free market and possesses monopoly and market power in the toll-free market.

23. AT&T, upon information and belief, derives substantially more revenue per minute from the sale of toll-free services than it does from the sale of IXC services.

24. As a provider of teleconferencing services directly to consumers and enterprises AT&T competes with plaintiff in the teleconferencing market.

25. For plaintiff to operate its business, its customers must have access to IXC services and must be able to participate in teleconferences by use of the AT&T network

(including the interexchange network operated by AT&T IXC and Cingular and any other subsidiaries or entities owned or controlled by AT&T). Accordingly, AT&T operates a facility essential to the viability of plaintiff's business and to its ability to provide low-cost teleconferencing services to consumers and enterprises in the United States. Plaintiff's long distance teleconferencing service is substantially less costly to end-users than its own toll-free teleconferencing services and its competitors toll-free teleconferencing services, which require customers to pay a direct usage fee to the teleconference service provider.

26. AT&T, including its AT&T IXC and Cingular subsidiaries, has for at least the past five (5) years completed interexchange calls placed by plaintiff's customers to telephone numbers assigned to plaintiff's various business locations without incident or complaint by AT&T.

27. Despite this course of prior dealing, AT&T, through its subsidiary Cingular, has unilaterally refused to deal with plaintiffs by blocking calls to plaintiff placed over its Cingular network and preventing plaintiff's customers from accessing plaintiff's services or participating in teleconferences through AT&T's essential IXC services.

28. Such call blocking conduct is anticompetitive and injurious to competition in the IXC market. If permitted, the denial of service will necessarily require customers of plaintiff and of other providers of long distance teleconferencing services to discontinue using teleconferencing services altogether or to use AT&T's more costly toll-free teleconferencing and toll-free teleconferencing services offered by other, more-costly providers that employ toll-free services. Although toll-free teleconferencing is far more costly to end-users than long-distance teleconferencing, the sale of wholesale toll-free services is much more lucrative to AT&T than the sale of retail IXC services. AT&T's unlawful and anticompetitive conduct, therefore, shifts

demand from economical IXC services to more costly toll-free services and appropriates to AT&T a large portion of the consumer surplus generated by low-cost long distance teleconferencing offered by plaintiff and captures it through high usage fees it charges for the toll-free services used in toll-free teleconferencing services.

29.   AT&T's anticompetitive call blocking also injures competition in the teleconferencing market. AT&T's call blocking will inevitably eliminate competition in that market from providers of long distance teleconferencing services such as plaintiff, thereby depriving consumers and enterprises of the low cost services provided by plaintiff and other providers of long distance teleconferencing services. By eliminating the competitive constraints imposed in the teleconferencing market by plaintiff and other such providers, prices for teleconferencing services will increase, output will decrease, and consumers and enterprises throughout the United States will be directly and proximately injured.

30.   AT&T's failure to pay the terminating access fees it owes to LECs doing business with plaintiff for services rendered constitutes anticompetitive conduct, the intent and effect of which will be to destroy plaintiff's relationships with the LECs and destroy plaintiff's business.

31.   AT&T's anti-competitive non-payment of access fees is injurious to competition in the IXC market. The departure of plaintiff from the teleconferencing market will necessarily require customers of plaintiff and of other providers of long distance teleconferencing services to discontinue using teleconferencing services or to use AT&T's more costly toll-free teleconferencing services and toll-free teleconferencing services offered by other, more costly providers of toll-free teleconferencing services. Although toll-free teleconferencing is far more costly to end-users than long-distance teleconferencing, the sale of wholesale toll-free services is much more lucrative to AT&T than the sale of retail IXC services. AT&T's unlawful and

anticompetitive conduct, therefore, shifts demand from economical IXC services to more costly toll-free services and appropriates to AT&T a large portion of the consumer surplus generated by low-cost long distance teleconferencing offered by plaintiff and captures it through high usage fees it charges for the toll-free services used in toll-free teleconferencing services.

32. AT&T's anticompetitive non-payment also injures competition in the conference calling market. AT&T's non-payment will inevitably eliminate competition in that market from providers of long distance teleconferencing services such as plaintiff, thereby depriving consumers and enterprises of the low cost services provided by plaintiff and other providers of long distance teleconferencing services. By eliminating the competitive constraints imposed in the teleconferencing market by plaintiff and other such providers, prices for teleconferencing services will increase, output will decrease, and consumers and enterprises throughout the United States will be directly and proximately injured.

33. Plaintiff has been and will continue to be injured in its business and property as the proximate and intended result of AT&T's anticompetitive conduct and the nature of said injury is of the type that the antitrust laws were intended to protect.

34. Plaintiff's injury continues as of the date hereof and if it continues in the future it will cause plaintiff imminent and irreparable harm for which plaintiff has no adequate remedy at law.

## COUNT II

**(Petition for writ of mandamus for violations
of the Communications Act, 47 U.S.C. § 406)**

35. The allegations in paragraphs 1–34 are hereby incorporated herein as if fully re-alleged in this count.

36. Section 406 of the Communications Act, 47 U.S.C. § 406, provides that a writ of mandamus may be obtained by any person injured by a violation of the Act by a common carrier that prevents such person from receiving service or allows for service but only on terms less favorable than made available to others by the carrier. AT&T has committed violations of the Act which entitle plaintiff to a writ of mandamus as against AT&T.

37. Among the provisions of the Communications Act violated by AT&T is Section 201(b). Section 201(b) requires, *inter alia*, that all "practices ... in connection with [interstate or foreign] communication service, shall be just and reasonable, and any such [] practice ... that is unjust or unreasonable is hereby declared to be unlawful." AT&T's violation of this provision encompasses a call-blocking scheme which, in effect, prevents plaintiff from receiving service and results in discriminatory treatment of plaintiff. Moreover, AT&T's illegal and anti-competitive call-blocking scheme is not just or reasonable under any provision of the Communications Act, the FCC's implementing rules or policies, or jurisprudential theory. AT&T's proffered "justification" is that blocking calls to plaintiff's service is a valid means of challenging the presumptively lawful and reasonable termination access fees charged by the LECs that terminate the calls to plaintiff's service. In fact, "self-help" via call-blocking is *not* an authorized method for challenging the reasonableness of access charges. AT&T's true motivation for its illegal scheme is evinced by the fact that AT&T does not just block calls, but it directs the blocked callers to AT&T's *own* teleconferencing service – effectively stealing plaintiff's customers and goodwill.

38. Another provision of the Communications Act violated by AT&T is Section 202(a). That provision makes it unlawful for any common carrier to make "any unjust or unreasonable discrimination in [ ] practices ...facilities, or services ... or to make or give any

11

undue or unreasonable preference or advantage to any particular person." There are other teleconferencing service providers who provide teleconferencing services like that of plaintiff. Upon information and belief, AT&T continues to terminate interstate calls to many or all of these other service providers for like services. In addition, throughout the entire period during which AT&T has erected a virtual blockade on its termination of interstate communications traffic to telephone numbers assigned to plaintiff, AT&T has terminated and continues to terminate interstate calls to telephone numbers assigned to other parties in the same local exchanges and served by the same LECs that serve plaintiff's blocked numbers. Thus, with respect to the class of persons that have lawfully contracted for local exchange services from the LECs that also serve plaintiff, in many cases, only plaintiff has been singled out by AT&T for disparate treatment, which practice is discriminatory on its face. There is no reasonable basis for AT&T to block interstate calls to plaintiff's service while continuing to terminate calls to other teleconferencing service providers for like services and/or other customers who are served by the same LECs that have been prevented from terminating calls to plaintiff by AT&T's illegal embargo against calls to plaintiff. Thus, AT&T's illegal and anti-competitive call-blocking scheme results in discriminatory treatment of plaintiff.

39.     Another provision of the Communications Act violated by AT&T is Section 201(a). Section 201(a) requires, *inter alia*, that it is "the duty of every common carrier engaged in interstate or foreign communication ... to furnish such communication service upon reasonable request therefor." Neither the access rates associated with terminating interstate calls to telephone numbers assigned to plaintiff nor the access revenue sharing arrangements under which plaintiff shares access charge revenues with the LECs that terminate interstate

communications traffic to telephone numbers assigned to plaintiff have been found unreasonable, abusive, fraudulent or otherwise unlawful by the FCC or the courts.

## COUNT III

### (Damage claim for violations of the Communications Act, 47 U.S.C. § 207)

40.     The allegations in paragraphs 1–39 are hereby incorporated herein as if fully re-alleged in this count.

41.     Pursuant to Section 207 of the Communications Act, 47 U.S.C. § 207, plaintiff is entitled to recover damages from AT&T, a common carrier subject to the provisions of the Communications Act, for AT&T's violations of Sections 201(a), 201(b), and 202(a) of the Communications Act.

## COUNT IV

### (Permanent Injunction)

42.     The allegations of paragraphs 1–41 are hereby incorporated herein as if fully re-alleged in this count.

43.     The conduct by AT&T inflicts and threatens injuries not compensable fully by an award of damages. Such injuries include, but are not limited to, injury to plaintiff's reputation and goodwill, and the plaintiff's loss of future business from customers diverted to AT&T and other teleconferencing service providers via its illegal and anti-competitive call-blocking scheme.

44.     Plaintiff is entitled to a permanent injunction against AT&T preventing the irreparable injury inflicted and/or threatened by AT&T's illegal and anti-competitive call-blocking scheme.

## JURY DEMAND

45. Plaintiff hereby demands trial by jury.

WHEREFORE, plaintiff seeks the following relief:

A. A declaration that AT&T has violated Section 2 of the Sherman Act;

B. A declaration that AT&T has violated Sections 201(a), 201(b), and 202(a) of the Communications Act;

C. An order enjoining AT&T's blocking of any numbers subscribed to by plaintiff (and AT&T's ensuing diversion of plaintiff's customers to AT&T) and requiring the immediate unblocking of said numbers;

D. An order enjoining the non-payment of tariffed terminating access fees and the immediate payment of all fees owing and overdue;

E. The award of compensatory damages;

F. The award of a reasonable attorneys' fee;

G. The award of costs of this suit.

Dated: Washington, D.C.
       March 23, 2007

Respectfully submitted,

By: _____
John W. Schryber
    DC Bar# 450484
Jonathan L. Rubin
    DC Bar# 353391
**PATTON BOGGS LLP**
2550 M Street, NW
Washington, DC 20037
(202) 457-6000
(202) 457-6315 fax

*Attorneys for Plaintiff*

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

FreeConference.Com, Inc.
1800 Vine Street, Suite 222
Los Angeles, CA 90028

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    88888
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

ATT, INC.
175 E. Houston
San Antonio, TX 78205
et al. (See Attached)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    88888
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

## (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Patton Boggs, LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000

## ATTORNEYS (IF KNOWN)

Case: 1:07-cv-00574
Assigned To : Friedman, Paul L.
Assign. Date : 3/26/2007
Description: FREE CONFERENCE v. ATT INC.

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ● A. Antitrust
[X] 410 Antitrust

### ○ B. Personal Injury/Malpractice
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Medical Malpractice
- [ ] 365 Product Liability
- [ ] 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
- [ ] 151 Medicare Act

Social Security:
- [ ] 861 HIA ((1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g)
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g)

Other Statutes
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)   OR   ○ F. Pro Se General Civil

**Real Property**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent, Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**Personal Property**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**Bankruptcy**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

**Property Rights**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**Federal Tax Suits**
- [ ] 870 Taxes (US plaintiff or defendant
- [ ] 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- [ ] 610 Agriculture
- [ ] 620 Other Food &Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 RR & Truck
- [ ] 650 Airline Regs
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

**Other Statutes**
- [ ] 400 State Reapportionment
- [ ] 430 Banks & Banking
- [ ] 450 Commerce/ICC Rates/etc.
- [ ] 460 Deportation

- [ ] 470 Racketeer Influenced & Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Satellite TV
- [ ] 810 Selective Service
- [ ] 850 Securities/Commodities/Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 900 Appeal of fee determination under equal access to Justice
- [ ] 950 Constitutionality of State Statutes
- [ ] 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ● 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
AT&T, Inc. has violated the Clayton Act, 15 U.S.C.§ 15, the Communications Act of 1934, 47 U.S.C. §§ 201, 202 and 401 by blocking access to service.

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ _____   JURY DEMAND: Check YES only if demanded in complaint  YES ☒  NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE March 23, 2007   SIGNATURE OF ATTORNEY OF RECORD

JTC

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
*Authority for Civil Cover Sheet*

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.